UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN STEVEN SPARKS,                          Case No. 13-13954

            Plaintiff,                 Thomas L. Ludington
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 20, 22)**

A.    <u>Proceedings in this Court</u>

On September 16, 2013, plaintiff filed the instant suit seeking judicial

review of the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Thomas L.

Ludington referred this matter to Magistrate Judge Mark A. Randon, which was

subsequently reassigned to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claims.  (Dkt. 2).  This matter is

before the Court on cross-motions for summary judgment.  (Dkts. 20, 22).  The

cross-motions are now ready for report and recommendation.

B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claim for a period of disability and disability

insurance benefits on September 23, 2010.  (Tr. 225-233).  The same day, plaintiff

protectively filed a Title XVI application for supplemental security income.  (Tr.

234-237).  In both applications, plaintiff alleged a disability beginning July 24,

2006.[1]  The Commissioner initially denied plaintiff's disability application on

March 11, 2011.  (Tr. 143-144).  Thereafter, plaintiff requested an administrative

hearing, and on January 19, 2012, he appeared with counsel before Administrative

Law Judge ("ALJ") Jessica Inouye, who considered his case de novo.  (Tr. 48-

106).  In a February 15, 2012 decision, the ALJ determined that plaintiff was not

disabled within the meaning of the Social Security Act.  (Tr. 19-39).  The ALJ's

decision became the final decision of the Commissioner on July 12, 2013, when

the Social Security Administration's Appeals Council denied plaintiff's request for

review.  (Tr. 1-7).  Plaintiff filed this suit on September 16, 2013.  (Dkt. 1).

    For the reasons set forth below, the Court concludes that substantial

evidence supports the administrative law judge's residual functional capacity

("RFC") decision, including weighing the medical source opinions.  Relatedly, the

Court concludes that the ALJ properly assessed plaintiff's credibility.  Finally, the

Court concludes that there was no error in the questioning of the vocational expert.

The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary

Judgment (Dkt. 20) be **DENIED**, that Defendant's Motion for Summary Judgment

---

[1]  Plaintiff subsequently amended his alleged onset date to July 25, 2008.  (Tr. 24).

(Dkt. 22) be **GRANTED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff had past relevant work as a truck driver.  (Tr. 32).  The ALJ determined that per the Dictionary of Occupational Titles (DOT) a truck driver is classified as "medium" work; however, based on plaintiff's testimony, the ALJ determined that it should be considered "heavy" work.  (*Id*.)  The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that between the amended alleged onset date (July 25, 2008) and the last date insured (December 31, 2014), plaintiff did not engage in any substantial gainful activity. (Tr. 24).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease, depression/bipolar disorder, and anxiety. (*Id*.)  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations.  (*Id*. at 25).

The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform:

> [L]ight work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except that he can stand and walk for a total
> of four hours out of an eight-hour workday.  The

claimant should not push or pull with his feet, or use foot
controls.  The claimant should not climb ladders, ropes,
or scaffolds.  He can only occasionally climb ramps and
stairs, balance, stoop, kneel, crouch, and crawl.  He
should avoid all exposure to heights, moving machinery,
and other hazards.  The claimant should perform no
commercial driving of a motor vehicle.  Any driving that
might be required as part of his job should be able to be
completed in less than one hour.  He should avoid
concentrated exposure to humidity, wetness, and extreme
cold.  He should avoid even moderate exposure to
vibrations.  He can use a cane when walking on an
occasional basis.  When he does use a cane, his ability to
lift and carry will be limited in his arm using the cane.
The claimant can perform unskilled work that is simple,
routine, and repetitive.  His work should have reduced
stress, meaning only occasional changes in the work and
occasional decision-making.  The claimant can have
superficial contact with the public and occasional contact
with coworkers and supervisors.

(Tr. 26-27).  At step four, the ALJ determined that plaintiff was not capable of

performing any past relevant work.  (Tr. 32).  At step five, the ALJ concluded that

based on plaintiff's age, education, work experience and RFC, there were jobs that

existed in significant numbers in the national economy that plaintiff could have

performed and, therefore, he was not under a disability at any time from the

alleged onset date through the date last insured.  (Tr. 33-34).

    B.   <u>Plaintiff's Claims of Error</u>

Plaintiff raises three issues for this court's consideration: first, whether the

ALJ impermissibly weighed the medical source opinions; second, whether the ALJ

4

erred in discounting plaintiff's credibility; and third, whether the ALJ submitted an inaccurate hypothetical to the vocational expert.  (Dkt. 20, Pl.'s Brief, at 9-12).

First, plaintiff argues that the ALJ violated the treating physician rule. Specifically, he argues that "the whole record" during the period of his alleged disability consists of many months worth of treatment notes from his primary physician, Dr. Muzaffar Awan, finding radiculopathy, depression and "other ailments" that supports Dr. Awan's findings on clinical examination.  Plaintiff says that the record contains an EMG evidencing a nerve injury, a consultative examiner finding indicating "significant" psychiatric difficulty, and a state agency consultant that found plaintiff to have "significant" sitting, standing, lifting and other restrictions.  Plaintiff claims that these records were those of primarily treating sources.  (*Id*. at 9).  Plaintiff argues that Dr. Awan saw plaintiff for several years and has consistently noted plaintiff's problems.  (*Id*. at 10).

Similarly, plaintiff contends that psychological consulting examiner, Dr. Janette Caputo, while not a "treating source," had the opportunity to evaluate plaintiff from a perspective of first-hand experience and in-depth interview.  (*Id*.) Plaintiff argues that instead of relying on the evidence provided by Dr. Awan and Dr. Caputo, the ALJ gave more weight to the opinions of a consultative examiner and two state agency consultants who never met plaintiff.  (*Id*.)

Plaintiff further agues that the ALJ's credibility assessment is flawed.  (Dkt.

5

20 at 10).   Plaintiff says that the ALJ failed to explain how his daily activities were contrary to the medical evidence.   Rather, the ALJ simply noted that plaintiff was capable of doing his household chores.   No effort was made by the ALJ to make a qualitative or quantitative analysis of plaintiff's activities as compared to the medical records.   Plaintiff claims that such an analysis is required by *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

Plaintiff also argues that the ALJ's hypothetical to the vocational expert is flawed in that it does not include the postural limitation of plaintiff's inability to sit for prolonged periods of time.  (Dkt. 20, at 11).   Plaintiff claims that the ALJ implicitly recognized this restriction on plaintiff when she limited him to one-hour of driving.   Yet, at the same time, the ALJ's hypothetical allowed for jobs that required prolonged sitting.[2]   Plaintiff testified that he could sit for only one hour and a state agency consultant determined that plaintiff had significant sitting restrictions.   For these additional reasons, plaintiff argues that the ALJ improperly discounted his testimony on his ability to sit.

---

[2]  Plaintiff claims that two of the three jobs that the vocational expert opined were suitable for plaintiff, "inspector/checker" and "packager," are blended DOT jobs and, as a result, no DOT numbers are available.  As such, these jobs are not identifiable in the DOT rendering cross-examination impossible.  (Dkt. 20, at 8).

C.    The Commissioner's Motion for Summary Judgment

1.    Substantial Evidence

The Commissioner claims that the ALJ's finding that plaintiff was not disabled because he had the residual functional capacity to perform a range of light work should be affirmed because it is supported by substantial evidence. (Dkt. 22).  The Commissioner avers that the ALJ thoroughly considered plaintiff's assertions that he became disabled after he injured his back in a work-related incident, that he had pain radiating down his leg, and that, despite surgery, his pain worsened.  (Tr. 27, 58-72, 95-96).  The ALJ furthermore considered plaintiff's claim that he could sit for only one hour, stand for 15 minutes at one time, and walk for 600 feet at one time.  (Tr. 27, 95-96).  With respect to plaintiff's mental impairments, the ALJ acknowledged plaintiff's allegations of disability because he had panic attacks, suicidal thoughts, and trouble concentrating.  (Tr. 27, 77-83, 86).  Plaintiff asserts that the ALJ did not refer to the plaintiff's hearing testimony, but that is not true.  The ALJ considered plaintiff's testimony in detail, including why he claimed to be mentally and physically disabled.  (*See, e.g.*, Tr. 27).  The ALJ also considered plaintiff's assertion that he could only sit for one-hour, but did not find plaintiff to be fully credible.  (Tr. 27).

2.    Physical Impairments

The ALJ considered evidence of plaintiff's physical impairments both

7

before and after his July 2008 onset date (including and after plaintiff's July 2007 back surgery), and found that it did not support a finding of disability. (Tr. 28). The Commissioner argues that it was proper for the ALJ to consider pre-onset evidence of plaintiff's physical impairments to establish the background relating to the injury that caused plaintiff's ongoing back problem and his subsequent surgery. Moreover, the Commissioner points out that plaintiff offers no authority to establish that the ALJ erred in this regard.

With respect to plaintiff's physical impairments post-onset date, the Commissioner states that the ALJ considered an August 2011 EMG that showed only mild axonal injury to plaintiff's right tibial motor nerve. (Tr. 28, 722-23). Further, the ALJ considered plaintiff's examinations with physicians, including those with Dr. Awan from September 2008 until January 2011 and found that they were relatively normal. (Tr. 28, 533-560). During these examinations, Dr. Awan noted that although plaintiff's sit-slump and Patrick's tests were positive bilaterally; his straight leg test was positive for his right leg; and he had normal thoracic kyphosis and lumbar lordosis. (*Id.*) Dr. Awan also noted that plaintiff's hips, knees and ankles had normal ranges of motion, his muscle strength was 5-out-of-5 throughout; his reflexes were intact and symmetrical; there were no sensory deficits; his gait was within normal limits; he could ambulate in a heel-toe fashion; and his Romberg's test was negative. (*Id.*) The Commissioner also

8

points out that the ALJ considered notes from the plaintiff to Dr. Awan which indicated that heat, his TENS unit, and medication helped to relieve his symptoms. (*Id*.)  The Commissioner argues that it is axiomatic that "an impairment that can be remedied by treatment with reasonable effort and safety cannot support a finding of disability." *Johnson v. Sec'y of HHS*, 794 F.2d 1106, 1111 (6th Cir. 1986).

The Commissioner argues that Dr. Awan's diagnoses of "radiculopathy," standing alone, is insufficient to establish a disability.  Rather, plaintiff must also provide its severity and functional impact.  *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988).  Here, contends the Commissioner, the ALJ considered Dr. Awan's examination findings and concluded that despite plaintiff's radiculopathy, his treatment notes portrayed an individual capable of light work.  (Tr. 28).

In addition, the ALJ considered plaintiff's examination with consultative physician Dr. R. Scott Lazarra.  Dr. Lazarra noted tenderness at the L5-S1 inter-disc space on the right side, but plaintiff did not exhibit any para-vertebral spasm. (Tr. 28, 569-70).  Dr. Lazarra observed that plaintiff's strength was a 4/5 and that he walked with a mild limp with a cane.  (Tr. 28, 566-70).  While a cane was helpful for pain control, Dr. Lazarra did not feel that it was necessary for ambulation.  (Tr. 29, 566-57).  Moreover, Dr. Lazarra did not note any current radicular symptoms, plaintiff's straight leg raise was negative, he had a full range of motion in his joints, he had no difficulty getting on and off the examining table,

and he had only mild difficulty heel and toe walking, squatting, and hopping.  (Tr. 29, 566-70).  Dr. Lazarra imposed no sitting restrictions.  (Tr. 30, 566-68).  The ALJ gave great weight to Dr. Lazarra's opinion that plaintiff could carry, push, and pull less than 30 pounds, that a cane was not required, but would be helpful for pain control, that plaintiff's overall degree of impairment appeared to be "moderate," and that his long-term prognosis was "fair."  (Tr. 30, 566-70).

The ALJ also gave great weight to the opinion of reviewing physician, Dr. Dolanski, who found plaintiff to be capable of a modified range of light work with some postural and environmental limitations.  (Tr. 30, 119-20, 136-38).  The Commissioner contends that "administrative law judges must consider findings of State agency medical and psychological consultants" who are experts in the field of disability evaluation. 20 C.F.R. § 404.1527(f)(2)(i). And, "in appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating ... sources."  Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996).  One such circumstance is where, as here, the "State agency medical or psychological consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source."  *Id.*  It is also well-settled in the Sixth Circuit that, if appropriate, an ALJ may afford greater weight to a reviewing medical source than to a treating one.

*See e.g.*, *McGrew v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 26, 31-32 (6th Cir. 2009) (rejecting claimant's argument that ALJ should not rely on reviewing source over treating source); *Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 651-52 (6th Cir. 2006) (*en banc*) (ALJ may adopt reviewing physician's opinion over treating one). Indeed, the Sixth Circuit also has held that "the reviewing physicians . . . have the strongest claims to neutrality." *Lucido v. Barnhart*, 121 F. App'x 619, 622 (6th Cir. 2005).  For all of these reasons, the Commissioner claims that the ALJ reasonably gave great weight to Dr. Dolanski's opinion and her findings should not be disturbed.

Finally with respect to plaintiff's physical limitations, the ALJ also evaluated the opinion of Dr. Georgem, a state Medicaid consultant, who opined that plaintiff could perform a range of sedentary work.  (Tr. 31, 665-67).  The Commissioner argues that the ALJ indicated that she discounted this opinion because it conflicted with examining physician Dr. Lazarra's opinion as well as it was undercut by plaintiff's reported daily activities.  (Tr. 30-31).  The ALJ thoroughly explained plaintiff's daily activities and found that those, too, did not support a claim that he was disabled.

### 3.    Mental Impairments

The Commissioner notes that the ALJ acknowledged that plaintiff suffered from anxiety and either depression or bipolar disorder.  (Tr. 29, 521-31, 572-77).

However, after reviewing the record, the ALJ determined that plaintiff received little mental health treatment during the relevant period (June 2009 until August 2011). (Tr. 29, 525-26, 573, 686). Importantly, plaintiff did not provide any counseling records to the agency for review. Also, plaintiff was only taking one mental health-related medication during the relevant period, Seroquel, and he was never hospitalized for any mental health issues. (Tr. 29). For these reasons, the Commissioner agues that the ALJ reasonably concluded that the objective records did not support a claim for a mental disability. *Stanley v. Sec'y of HHS*, 39 F.3d 115, 118 (6th Cir. 1994) (ALJ may discount claimant's statements when objective records do not show disability).

The Commissioner also contends that the ALJ was reasonable in giving "moderate" weight consultative psychologist Dr. Caputo's opinion because, while it reflected that plaintiff had some limitations, as a whole is did not show that his limitations were disabling. (Tr. 29, 572-78). Specifically, Dr. Caputo noted that plaintiff was tense and anxious, but she also found plaintiff to be cooperative, courteous, and goal-oriented. (*Id.*) And, while plaintiff's data recall was haphazard; he had trouble recalling certain time frames; and he had mild loose association and tangentiality; he did not demonstrate any fight or flight of ideas and had good cause and effect logic. (*Id.*) The Commissioner also notes that the ALJ points out that Dr. Caputo also observed that plaintiff had no delusional or

12

paranoid thinking and while he reported some suicidal thoughts, he admitted that he was unlikely to act on them. (*Id*.) Moreover, while plaintiff's mood was depressed and anxious, his affect was full range. (*Id*.) Significantly, according to the Commissioner is Dr. Caputo's conclusion that plaintiff did not meet the criteria for bipolar disorder and, instead, she diagnosed him with depression and panic disorder. (Tr. 30, 577).

The ALJ gave "moderate" weight to Dr. Caputo's opinion concluding that it was ambiguous, wide-ranging and indefinite. (Tr. 30, 572-78). It is well-settled that those are legitimate reasons for discounting a medical opinion. *See Williams v. Comm'r of Soc. Sec.*, 39 Fed. Appx. 276, 277-78 (6th Cir. 2002) (ALJ properly rejected treating physician's opinion that was inconsistent with his diagnosis); *Bascomb v. Comm'r of Soc. Sec.*, No. 11-11418, 2012 WL 683355, at *10 (E.D. Mich. Mar. 2, 2012) (affirming ALJ's decision to discount treating physician's opinion that was "internally inconsistent"). Here, the Commissioner points out several inconsistencies within Dr. Caputo's findings, including plaintiff's ability to retain simple and complex instructions, and plaintiff's ability to interact with other people successfully. (Tr. 30, 575-58). The Commissioner also avers that the ALJ reasonably found some of Dr. Caputo's findings to be vague and difficult to translate into functional limitations. For example, Dr. Caputo's finding that plaintiff's judgment, decisions and problem solving skills

13

were "vulnerable to his affective needs and moods." (Tr. 30, 578). Despite this, the ALJ formulated an RFC that essentially accommodated the concentration and focus-based limitations that Dr. Caputo had recommend by limiting plaintiff to unskilled work that was simple, routine, and repetitive. (Tr. 30). The ALJ further restricted plaintiff to working in a reduced-stress environment, with only superficial contact with the public and occasional contact with coworkers and supervisors. (*Id*.)

For the same reasons stated above, the Commissioner claims that the ALJ properly gave "great" weight to reviewing psychologist Dr. Garner's opinion that plaintiff would do best in tasks that did not require frequent or prolonged interactions with others and that plaintiff retained the ability to do one- and two-step tasks on a sustained basis. (Tr. 30, 12–22, 138-40).

Finally, the Commissioner argues that the ALJ reasonably attributed "little" weight to plaintiff's GAF score as those scores do not reflect a clinician's opinion of functional capacity. (Tr. 32, 6F, 9F, 12F).

In sum, the Commissioner argues that the ALJ's decision is within the "zone of choice" that grants ALJ's discretion in making findings without interference by the courts. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). "The burden lies with the claimant to prove that []he is disabled." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010). Because plaintiff has not

14

met his burden in this case, the Commissioner argues that the ALJ's decision should be affirmed.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters*, 127 F.3d at 528.  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

    If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

17

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

inability to engage in any substantial gainful activity by

18

> reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits

are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis

1.     Medical Opinion Evidence

Plaintiff argues that the ALJ mishandled the treating and consultative source opinions in this case in an attempt to fashion a finding of disability.  "Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

> An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source").

*Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013) (internal citations omitted).

An ALJ is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any.  20 C.F.R. § 404.1527; *see Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Commissioner may not disregard opinions of a consulting physician which are favorable to a claimant.  *See Lashley*

21

*v. Sec'y*, 708 F. 2d 1048, 1054 (6th Cir. 1983).  Moreover, "in weighing medical evidence, 'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009)).  An ALJ may not substitute his [or her] own medical judgment for that of a treating or examining doctor where the opinion of that doctor is supported by the medical evidence.  *See Simpson*, 344 Fed. Appx. at 194; *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at * 13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio 2011).  This is so even though the final responsibility for the RFC determination is an issue reserved to the Commissioner.  *Allen,* 2013 WL 5676254, at *15.

Plaintiff's primary argument is that the ALJ did not give proper weight to his treating physician, Dr. Muzaffar Awan, when Dr. Awan gave plaintiff a diagnosis of "radiculopathy." Plaintiff feels that this diagnosis should have resulted in a finding of disability. This Circuit has made clear that simply because plaintiff suffers from certain conditions or carries certain diagnoses does not equate to disability or a particular RFC. Rather, it is well settled that the mere diagnosis of an impairment is not enough to show disability; a claimant must also prove its severity and functional impact. *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988). The residual functional capacity circumscribes "the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from–though his maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). Thus, the mere existence of any condition from which plaintiff may have suffered does not

necessarily establish any functional limitation or disability.

Here, although Dr. Awan diagnosed plaintiff with "radiculopathy," that alone is insufficient to establish a disability. *See Foster*, 853 F.2d at 489. The court finds significant that the ALJ throroughly considered Dr. Awan's examination findings (dated September 2008 until January 2011) and concluded that despite plaintiff's diagnosis, plaintiff was capable of light work.[3] (Tr. 28). In support, the ALJ specifically noted that although plaintiff's sit-slump and Patrick's tests were positive bilaterally, his straight leg test was positive for his right leg, and he had normal thoracic kyphosis lumbar lordosis. (Tr. 28; 533-560). The ALJ also pointed out Dr. Awan's findings that plaintiff's hips, knees and ankles had normal ranges of motion, his muscle strength was 5-out-of-5 throughout; his reflexes were intact and symmetrical; there were no sensory deficits; his gait was within normal limits; he could ambulate in a heel-toe fashion; and his Romberg's test was negative. (*Id.*) Moreover, the ALJ noted that plaintiff self-reported that heat, his TENS unit and medication held to relieve his symptoms. (*Id.*) This court

---

[3] In making this argument, the undersigned is troubled that plaintiff merely cites to Exhibits 10F/22F (treating source records), and only in a skeletal way defines what these records are and makes no effort to establish how they affect his functional limitations or alleged disability. *See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) (Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving it for the court to put flesh on its bones). The court will review plaintiff's treating physician argument, but as noted *infra*, his argument regarding other medical sources has been waived due to lack of argument.

agrees with the Commissioner that "an impairment that can be remedied by treatment with reasonable effort and safety cannot support a finding of disability." *Johnson v. Sec'y of HHS*, 794 F.2d 1106, 1111 (6th Cir. 1986). Based on the above, the undersigned concludes that the ALJ reasonably weighed Dr. Awan's opinion and determined that his diagnosis of "radiculopathy" did not preclude all work.

Contrary to plaintiff's contentions, psychological consultative examiner Dr. Janette Caputo is not a treating physician and the ALJ had no obligation to evaluate her opinions as such. Indeed, plaintiff acknowledges in his argument that Dr. Caputo is not a treating physician, but instead asks the court to construe her to be one because she spent a great deal of time interviewing plaintiff. The undersigned declines to do so. The ALJ found Dr. Caputo's opinion to be consisisent with the plaintiff's mental limitations and the RFC. (*Id*.) For example, the ALJ noted that Dr. Caputo opined:

> the claimant was able to understand and retain simple and complex instructions, but memory retrieval skills would require cueing for success. The examiner also opined that the claimant's interactions with others was expected to be unpredictable with the potential conflict, but the claimant did understand the work hierarchy and the role of supervisors. According to the examiner, the claimant's judgment, decision-making, and problems solving skills were vulnerable to his affective needs and moods (l 2F).

(Tr. 30). Because the ALJ determined Dr. Caputo's opinion to be ambiguous, "wide-ranging" and "indefinite," the undersigned concludes that the ALJ reasonably assigned it moderate weight. *See Bascomb*, 2012 WL 683355 at *10. As noted above, the Commissioner points out several inconsistencies within Dr. Caputo's findings regarding plaintiff's ability to retain simple and complex instructions, and plaintiff's ability to interact with other people successfully. (Tr. 30, 575-58). Despite this, the RFC accommodated the concentration and focus-based limitations that Dr. Caputo had recommend by limiting plaintiff to unskilled work that was simple, routine, and repetitive. (Tr. 30). Plaintiff was additionally restricted to working in a reduced-stress environment, with only superficial contact with the public and occasional contact with coworkers and supervisors. (*Id*.)

While plaintiff seems to question the ALJ's weighing of all the medical opinions in the record, plaintiff only tangentially refers to these opinions. On pages four and five of his brief, plaintiff lists various exhibits where physicians and consultants make findings for and against a finding of disability; however, plaintiff does not identify what specific evidence supports his claim. Moreover, and importantly, plaintiff does not attempt to explain how the ALJ incorrectly weighs this evidence, or how the evidence in question bears on the RFC analysis. For these reasons, the undesigned concludes that plaintiff has waived any

arguments he has with respect to the other medical source opinions in the record.
*See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) (Issues adverted
to in a perfunctory manner, unaccompanied by some effort at developed
argumentation, are deemed waived.  It is not sufficient for a party to mention a
possible argument in the most skeletal way, leaving it for the court to put flesh on
its bones).

That said, a review of the record shows that the ALJ has properly reviewed
the medical source opinions here.  For example, the undersigned concludes that
the ALJ did not err in giving the opinion of state agency physical consultant, Dr.
R. Scott Lazarra "great" weight because it was consistent with the record and was
supported by Dr. Lazarra's thorough evaluation of plaintiff.  For example, Dr.
Lazarra opined that plaintiff could carry, push and pull less than 30 pounds.  (Tr.
30).  Dr. Lazarra determined that plaintiff did not require a cane to ambulate, but
that one would be helpful for pain control.  (*Id*.)  Dr. Lazarra further concluded
that plaintiff's overall degree of impairment was moderate and that his long-term
prognosis was fair.  (*Id*.)

The court also concludes that the ALJ reasonably gave "great" weight to
state agency medical consultant, Dr. Daniel Dolanski and psychological
consultant, Dr. Mark Garner.  (Tr. 30).  Dr. Dolanski opined that plaintiff was
capable of a modified range of light work with some postural and environmental

27

limitations.  Dr. Garner opined that plaintiff would do best in tasks that did not require frequent or prolonged interactions with others.  According to Dr. Garner, plaintiff retained the ability to do one- and two-step tasks on a sustained basis. The ALJ noted that both consultants are non-examining and non-treating, but they are both experts in their respective fields and they had the opportunity to review the entire record at the time of their opinions.  This court finds no error in the weighing of these two opinions.

Plaintiff also argues that the ALJ erred in giving plaintiff's GAF scores in the 40's (6F, 9F, 12F) "little weight," but the Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Kennedy v. Astrue*, 247 Fed. App'x 761, 766 (6th Cir. 2007) (citations omitted).  Accordingly, any decision to disregard the GAF scores is of little consequence and would not undermine a decision supported by substantial evidence.  *See Oliver v. Comm'r of Soc. Sec.*, 2011 WL 924688, at *4 (6th Cir. Mar. 17, 2011) (upholding ALJ's decision not to rely on GAF score of 48 because it was inconsistent with other substantial evidence in the record and noting that "GAF score is not particularly helpful by itself").

28

2.      Credibility Finding

Plaintiff argues that the ALJ erred in concluding that his testimony as to the intensity and persistence of his symptoms associated with his impairments was not entirely credible.  As the relevant Social Security regulations make clear; however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. §§ 404.1529(a), 416.929.  Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

"It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)).  As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the

29

claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529. Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec*., 409 Fed. Appx. 852, 863 (6th Cir. 2011).

In discounting his credibility, plaintiff believes that the ALJ considered

medical evidence that occurred prior to his amended onset date. However, the undersigned concludes that this evidence was used to demonstrate plaintiff's medical history and to show that the pre-onset evidence (as with the post-onset evidence) does not support a finding of disability.   We agree with other courts in our Circuit who have held:

> Plaintiff has not cited to, any rule, regulation, or case prohibiting an ALJ from considering evidence in the record simply because it is from prior to an alleged disability onset date. Despite Plaintiff's contentions otherwise, the Court does not find the ALJ improperly used such evidence or that it was somehow "irrelevant." As the ALJ's findings are supported by substantial evidence, and for the reasons stated above, Plaintiff's argument is without merit.

*Puterbaugh v. Colvin*, 2013 WL 3989581, at *15 (S.D. Ohio Aug. 2, 2013), *report and recommendation adopted*, 2013 WL 4457364 (S.D. Ohio Aug. 20, 2013).  As discussed above, the ALJ also extensively reviewed the medical source evidence after plaintiff's amended onset date (post-July 25, 2008) and determined that the evidence does not support a finding of disability.  (Tr. 28-31).

As permitted by the regulations, the ALJ also considered plaintiff's activities of daily living in assessing the credibility of his subjective complaints. The ALJ considered his self-reported activities of performing household chores, preparing simple meals, driving a car, shopping, watching television, listening to music, and playing the guitar.  (5E, 11F, 12F)   Plaintiff also reports that while

limited due to his back symptoms, he does some snow shoveling and yard work.

(*Id*.)  An ALJ may reasonably view such daily activities as inconsistent with

subjective complaints of disabling limitations.  20 C.F.R. § 404.1529(c)(3)(I); *see*

*also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004)

(recognizing that in nearly all cases, an evaluation of a claimant's daily activities

is relevant to the evaluation of subjective complaints and ultimately, to the

determination of disability); *Heston*, 245 F.3d at 536 (an ALJ may consider

claimant's testimony of limitations in light of other evidence of claimant's ability

to perform tasks such as walking, going to church, going on vacation, cooking,

vacuuming and making beds).  Thus, it was appropriate for the ALJ to consider

plaintiff's activities of daily living as one factor in assessing his credibility.

    For all of the above reasons, the undersigned concludes that the ALJ

properly assessed plaintiff's credibility here.

            3.    Vocational Expert Testimony

> In order for a vocational expert's testimony in response
> to a hypothetical question to serve as substantial
> evidence in support of the conclusion that a claimant can
> perform other work, the question must accurately portray
> a claimant's physical and mental impairments.

*Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).  The rule that a

hypothetical question must accurately portray all of claimant's physical and mental

limitations does not divest the ALJ of her obligation to assess credibility and

determine the facts. *Griffeth v. Comm'r of Soc. Sec.,* 217 Fed. Appx. 425, 429 (6th Cir. 2007) (citing *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005)). In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that she accepts as credible. *Id.* (citing *Casey v. Sec'y of HHS,* 987 F.2d 1230, 1235 (6th Cir. 1993)). An ALJ is not required to accept a claimant's subjective complaints, and can present a hypothetical to the VE on the basis of her own reasonable assessment of the testimony and other evidence. *Id*. (citing *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003)).

Plaintiff contends that the hypothetical to the VE left out the postural limitation of "sitting." Specifically, plaintiff avers that while the RFC does not explicitly limit his sitting, the ALJ "implicitly" limited his sitting when he imposed a one-hour driving restriction. As such, plaintiff contends that it was error to not include a sitting restriction in the hypothetical to the VE.

In the view of the undersigned, the ALJ's RFC assessment and the related hypothetical posed to the VE accurately portray plaintiff's mental and physical impairments and thus provide substantial evidence to support the ALJ's non-disability finding. Plaintiff's assertions to the contrary (that the hypothetical was deficient because it did not encompass plaintiff's alleged inability to sit) are not supported by the medical evidence of record, nor credible lay testimony.

33

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 10, 2015           s/Michael Hluchaniuk
                                Michael Hluchaniuk
                                United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on <u>August 10, 2015</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                s/Tammy Hallwood
                                Case Manager
                                (810) 341-7887
                                tammy_hallwood@mied.uscourts.gov